J-S22024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DEANDRE TATE | : | |
| | : | |
| Appellant | : | No. 958 WDA 2022 |

Appeal from the PCRA Order Entered August 12, 2022
In the Court of Common Pleas of Erie County
Criminal Division at No: CP-25-CR-0001050-2017

BEFORE: OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.: **FILED: September 28, 2023**

Appellant, Deandre Tate, appeals from the August 12, 2022 order dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. We affirm.

A prior panel of this Court recited the pertinent facts:

> On January 26, 2017, [Appellant] was involved in a high-speed car chase with law enforcement officials that ended in gunfire on the grounds of the Pennsylvania Solders' and Sailors' Home in Erie. At trial, law enforcement officers testified that they saw [Appellant] aim and discharge his firearm in their direction. Two additional eyewitnesses testified that they also observed [Appellant] aim his firearm in the officers' direction. During his testimony, [Appellant] admitted that he discharged his firearm, but denied that he was aiming in the officer's direction. Specifically, [Appellant] testified that he discharged his firearm into the air with the hope that the officers would shoot him, intending to commit 'suicide-by-cop.'

***Commonwealth v. Tate***, 1413 WDA 2018 (Pa. Super. Oct. 7, 2019 ), unpublished memorandum, at 1-2. The high-speed chase occurred after

Appellant had been in a bar with a friend, drinking and using drugs. At the close of a three-day trial, a jury found Appellant guilty of two counts of aggravated assault, two counts of attempted homicide of a law enforcement officer, and related offenses. On August 6, 2018, the trial court imposed an aggregate 25 to 50 years of incarceration.

On direct appeal, Appellant challenged both the weight and sufficiency of the evidence in support of the fact that he acted with intent to injure or kill the police officers. This Court rejected his arguments. We explained that the jury was free to credit the testimony of four eyewitnesses who said Appellant aimed his firearm at the police and disbelieve Appellant's claim that he aimed elsewhere. Thus, the record confirmed that Appellant, after attempting to elude the police during a car chase, shot at two officers in an attempt to injure or kill them. *Tate*, 1413 WDA 2018, unpublished memorandum at 1, 8-9. We therefore affirmed the judgment of sentence by memorandum of October 7, 2019. Appellant did not seek allowance of appeal. Appellant filed this timely, counseled, first PCRA petition on November 2, 2020. The PCRA court conducted a hearing on March 28, 2022 and, after considering post-hearing briefs, denied relief. This timely appeal followed.

Appellant argues that trial counsel was ineffective for failing to present expert testimony on his mental health history. Defense counsel was in possession of mental health records indicating that, as far back as 2013, Appellant experienced "command hallucinations" directing him to hurt himself

- 2 -

and others. Appellant sought and received treatment for his condition over the years. He testified at trial that he was unmedicated at the time of the offenses but back on medication at the time of trial. Appellant argues that—owing to his successful treatment at the time of trial—the jury saw an apparently healthy defendant testify to his prior lack of mental health. Appellant believes that trial counsel's failure to consult with and present the testimony of a mental health expert was devastating to his defense.

On appeal from an order dismissing a PCRA petition, we must determine whether the record supports the PCRA court's findings of fact, and whether the PCRA court committed an error of law. *Commonwealth v. Diaz*, 183 A.3d 417, 421 (Pa. Super. 2018), *aff'd*, 226 A.3d 995 (Pa. 2020). The PCRA court's findings of fact, if supported by the record, are binding on this Court. *Id.* We review the PCRA court's legal conclusions *de novo*. *Id.*

To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must plead and prove that (1) the underlying issue is of arguable merit; (2) counsel had no reasonable strategic basis is support of the disputed action or inaction; and (3) the petitioner suffered prejudice, such that there is a reasonable probability that, but for counsel's error, the outcome of the underlying proceeding would have been different. *Commonwealth v. Stultz*, 114 A.3d 865, 880-81 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1201 (Pa. 2015). The failure to meet any of these prongs is fatal to the claim. *Id.*

In essence, Appellant's "suicide by cop" theory at trial rested on his claims that (1) he discharged his weapon "into the air" without aiming at the police, and (2) that his mental state was such that he had no intent to injure the police but wished to provoke return fire and die. The first of these claims has been fully litigated and determined against him at trial and on direct appeal. Presently, Appellant's focus is on explaining why he believes that trial counsel was constitutionally ineffective for failing to present expert testimony regarding Appellant's mental health. Appellant's brief details his mental health history, including several suicide attempts, back to late 2013, more than three years before the incident in question. He also summarizes the testimony of the expert, Dr. Gillian Blair, who testified before the PCRA court. Dr. Blair would have corroborated Appellant's prior suicide attempts and expounded on the information revealed in Appellant's mental health records. She also could have explained that his current medications enabled his demeanor at trial. Appellant's Brief at 25-26. Appellant claims there is a reasonable probability that Dr. Blair's testimony, if presented to the jury, would have altered the outcome of the trial.[1]

_____

[1] To establish that counsel was ineffective for failing to call a witness, a petitioner must establish:

> (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's

*(Footnote Continued Next Page)*

Appellant relies on several cases in which the petitioner obtained relief based on trial counsel's failure to consult with a mental health professional regarding his client. In **Commonwealth v. Legg**, 711 A.2d 430 (Pa. 1998), trial counsel had indicia of the defendant's mental health problems but failed to consult with a mental health professional. A proper investigation would have revealed evidence that supported a diminished capacity defense, reducing the defendant's offense from first- to third-degree murder. Counsel's failure resulted in prejudicial error. **Id.** at 433-35.

Likewise, Appellant relies on **Commonwealth v. Gainor**, 432 A.2d 1116 (Pa. Super. 1981), in which counsel did not investigate a possible insanity defense where the defendant assaulted a priest under the belief that the priest was possessing him. In addition, the defendant was exhibiting bizarre behavior in prison. On collateral review, a doctor familiar with the defendant testified that he believed, prior to the assault, that the defendant was mentally ill and needed to be hospitalized. **Id.** at 1117-18. We concluded that trial counsel was ineffective because he failed to investigate what appeared to be a viable insanity defense. **Id.** at 1118-19. Notably, the **Gainor** Court rejected the Commonwealth's argument that defense counsel

---

behalf; and (5) that the absence of the testimony prejudiced appellant.

**Commonwealth v. Michaud**, 70 A.3d 862, 868 (Pa. Super. 2013). As we explain in the main text, Appellant cannot establish prejudice.

was not ineffective because, among other things, the insanity defense was "negated by the evidence." *Id.* at 1120. "The mere possibility that an insanity defense could not have been successfully asserted does not excuse counsel's failure to explore the merits of such a defense." *Id.*

Finally, Appellant cites *United States v. Kauffman*, 109 F.3d 186 (3d Cir. 1997). There, the defendant was released from involuntary commitment against the advice of psychiatrists prior to the offense (selling stolen firearms). The defendant was examined at a state hospital shortly after his arrest. The doctor concluded that the defendant was psychotic at the time of the offense. *Id.* at 187. Counsel did not review the defendant's medical records or consult with a physician and advised the defendant to plead guilty. *Id.* at 188. The Third Circuit found that counsel was ineffective, reasoning that "though [defense counsel] may have found the strength of the government's case daunting, we can imagine no reasonable professional calculation which would support [counsel's] failure to conduct *any* pre-trial investigation into the facts and law of an insanity defense[.]" *Id.* at 190.

Appellant's reliance on *Legg*, *Gainor*, and *Kauffman* is misplaced. Each case addresses defense counsel's wholesale failure to investigate or present a defense based on the defendant's mental health. There is no such wholesale failure here. Defense counsel presented the "suicide-by-cop" defense to the jury, but without investigating the possibility of bolstering that

defense with expert testimony.[2]  Counsel spent "several days" with Appellant at Appellant's mother's house planning for a defense based on Appellant's lack of intent.  N.T. Hearing, 3/28/22, at 61.  Appellant testified at trial to details of his prior mental health history, including multiple prior suicide attempts.  N.T. Trial, 6/20/18, at 68-69.  He testified that, at the time of the offenses, he was abusing alcohol and illicit drugs but was not taking medication for his mental health condition.  ***Id.***

In our view, Appellant has failed to demonstrate prejudice.  Vital to Appellant's defense was his claim that he did not aim his weapon at the police when he fired it.  But the Commonwealth presented four eyewitnesses—the two police officers Appellant shot at and two others—who testified otherwise.  On direct appeal, this Court wrote:

> A review of the record reveals that [Appellant] pointed his firearm at Officers Allison and Wilson, and attempted to shoot both officers by repeatedly firing in their direction.  Officer Allison testified that he observed [Appellant] pointing his firearm directly at his partner, Officer Wilson, when [Appellant] fired his first shot.  Officer Allison further testified that he then drew his service pistol and began to engage [Appellant], at which time [Appellant] shifted his body, aimed his firearm at Officer Allison, and shot again.  Further, Dennis Peters, a night security supervision at Soldiers' and Sailors' Home, and Clifford Vantassel, a facility maintenance manager, each testified that they observed [Appellant] aim his firearm in the officers' direction.

---

[2] Appellant concedes there was no basis for a defense based on legal insanity. Appellant's Brief at 24.

*Tate*, 1413 WDA 2018, unpublished memorandum at 9 (record citations omitted). Given this state of the record, the jury could have credited the testimony Dr. Blair would have offered and still found that Appellant shot at both officers in an attempt to kill them (and lied when he testified otherwise).

We are cognizant of the *Gainor* Court's statement that defense counsel is not excused from the duty to investigate and a possible insanity defense even if counsel believes the evidence will negate that defense. Again, we note there was no wholesale failure to investigate and present a mental health defense in this case. Rather, the jury credited multiple eyewitnesses whose testimony negated a critical factual premise of the "suicide by cop" defense presented to them. *Gainor* is therefore distinguishable.

To find prejudice here, the PCRA court would have had to find a reasonable probability that expert testimony would have bolstered Appellant's defense to the extent that the jury would have disbelieved four eyewitnesses and instead credited Appellant's self-serving claim that he discharged his firearm harmlessly "into the air." We discern no error in the PCRA court's decision.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/28/2023